UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PERFORMANCE TRANS., INC., & UTICA MUTUAL INSURANCE COMPANY<br>          Plaintiffs,<br><br>GENERAL STAR INDEMNITY COMPANY,<br>          Defendant. | ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION<br>NO. 4:19-40086-TSH |

## ORDER AND MEMORANDUM ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket Nos. 16 & 20)

**November 25, 2019**

**HILLMAN, D.J.**

Performance Trans, Inc. ("PTI") and Utica Mutual Insurance Company ("Utica") (collectively, "Plaintiffs") filed this action against General Star Indemnity Company ("General Star"), alleging breach of an insurance contract and unfair business practices. Plaintiffs move for summary judgment on their declaratory judgment, breach of contract, and equitable subrogation claims. (Docket No. 16). General Star has filed a cross-motion for summary judgment on all of Plaintiffs' claims. (Docket No. 20). Because the Total Pollution Exclusion bars coverage for the accident underlying Plaintiffs' claims, the Court ***denies*** Plaintiffs' motion for summary judgment and ***grants*** General Star's motion for summary judgment.

### Background

General Star issued an insurance policy (the "Policy") to PTI for the period of March 1, 2018, through March 1, 2019. (Docket No. 21 at 1). As is relevant here, the Policy includes two

exclusions to coverage. Endorsement 13 (the "Special Hazards and Fluids Limitation Endorsement") provides,

> This policy does not apply to **ultimate net loss** or **costs** from any **event** arising out of, contributed by or relating to any Special Hazard described in this endorsement and resulting from the ownership, maintenance or use of any auto.
>
> Special Hazards:
>
> **A. Radiation Hazard**
> **B. Underground Hazard**
> **C. Drilling Fluids Unloading Hazard**
>
> However, this exclusion does not apply to an **event** arising out of the unloading of **drilling fluids** from an auto covered by this policy and covered by the **controlling underlying insurance** for the total limits of the **underlying insurance**, if the unloading of **drilling fluids** resulted directly from any of the following:
>
> 1. Heat, smoke or fumes from a **hostile fire**;
> 2. Upset or overturn of such auto;
> 3. A collision between such auto being used in your business and another object; or
> 4. A **short term drilling fluid event**, provided that coverage under this item 4:
>    a. Will be available to bodily injury or property damage, but not damage to real property or to a body of water or to any other natural resource; and
>    b. Will not be available unless written notice of the **short term drilling fluid event** is given to us or the **controlling underlying insurance** company as soon as practicable, but no more than thirty (30) days after the shipment of the **drilling fluids** was entrusted to your care.
>
> If any other limit, such as a sublimit, is specified in the **underlying insurance**, then paragraphs 1. and 2. Above will not apply unless that limit is specified in the SCHEDULE OF UNDERLYING INSURANCE.
>
> **Drilling Fluids** means liquids which are used in or result from oil or gas drilling, extraction or recovery operations, regardless if the liquids contain gases, chemicals, solids, additives or proppants. Such liquids include, but are not limited to, flowback water, brine water, hydraulic fracturing fluids, lubricants or slippery water. Drinking quality water does not fall within this definition.
>
> **Drilling Fluids Unloading Hazard** means the unloading of **drilling fluids** from any auto, mobile equipment, machinery or equipment, whether unloading is the result of movement of property by a mechanical device, an accident, a **spill** or otherwise.
>
> . . . ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

(Docket No. 20-2 at 27–28) (emphasis in original). And Endorsement 14 (the "Total Pollution Exclusion") provides,

> This policy does not apply to any damages for which the insured is legally liable, or loss, **costs** or expenses, arising out of, resulting from, caused by or contributed to by:
>
> a. The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.
> b. Any loss, **costs** or expense arising out of any:
>    (1) Request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or
>    (2) Claim or suit by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.
>
> Any actual or alleged: breach of duty, negligent act, error or omission, of any insured or of any person for whose acts any insured is legally liable which results in damages, loss, **costs** or expense as described in a. or b. above.
>
> 2. This policy does not apply to any damages for which the insured is legally liable, loss, **costs** or expenses arising out of, resulting from, caused by or contributed to by **pollutants** regardless of whether the **underlying insurance** affords coverage for such damages, loss, **costs** or expenses.
>
> **Pollutants** means:
>
> (a) Any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed; and
> (b) Any other substance defined as, treated as or considered to be **pollutants** by the **underlying insurance**.
>
> ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

(Docket No. 20-2 at 29) (emphasis in original).

On February 19, 2019, a PTI employee was driving a tanker-truck on Route 116 in North Salem, New York. The tanker-truck drove off the road and overturned, discharging approximately 4,300 gallons of gasoline, diesel fuel, and dyed diesel fuel onto the roadway and

3

adjacent reservoir (the "Accident"). At the direction of the New York State Department of Environmental Conservation, PTI undertook emergency response action to clean up the spill.

On March 13, 2019, PTI filed an insurance claim with General Star. (Docket No. 1 at 5). General Star disclaimed coverage under the Policy's Total Pollution Exclusion. (Docket No. 20-3). PTI informed its insurance broker of the disclaimer of coverage, and the insurance broker made a further demand to General Star to acknowledge coverage for the Accident. (Docket No. 1 at 5). General Star reiterated its disclaimer of coverage. (Docket No. 1 at 5). Utica, the malpractice insurer for the insurance broker, subsequently agreed to reimburse PTI for the clean-up effort up to a monetary cap in exchange for an assignment of its rights against General Star for insurance payments. (Docket Nos. 1 at 7, 20-4).

Plaintiffs filed the present action against General Star for breach of contract and unfair business practices. The parties filed cross-motions for summary judgment on August 19, 2019. (Docket Nos. 16 & 20).

## **Legal Standard**

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue is "genuine" when a reasonable factfinder could resolve it in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it may affect the outcome of the suit. *Id*.

When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (citation omitted).

**Discussion**

"Under Massachusetts law the interpretation of an insurance policy and the determination of the policy-dictated rights and obligations are questions of law, appropriate grist for the summary judgment mill." *Merchants Ins. Co. of New Hampshire v. U.S. Fid. & Guar. Co.*, 143 F.3d 5, 8 (1st Cir. 1998). Courts "construe an insurance policy de novo under the general rules of contract interpretation." *Valley Forge Ins. Co. v. Field*, 670 F.3d 93, 97 (1st Cir. 2012) (quoting *Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co*., 220 F.3d 1, 4 (1st Cir. 2000)) (alteration to quote in original). They "look first to 'the actual language of the policies, given its plain and ordinary meaning.'" *Id.* (quoting *Brazas*, 220 F.3d at 4). An "insurer bears the burden of demonstrating that an exclusion exists that precludes coverage," and ambiguities are construed against the insurer. *See id.* "Ambiguity exists when the policy language is susceptible to more than one rational interpretation." *Brazas*, 220 F.3d at 4–5.

General Star argues that the Total Pollution Exclusion bars coverage. Plaintiffs assert that the Policy is ambiguous and that interpreting the Total Pollution Exclusion as General Star suggests would improperly render the Special Hazards and Fluids Limitation Endorsement superfluous.

The Special Hazards and Fluids Limitation Endorsement excludes "the unloading of drilling fluids from any auto, mobile equipment, machinery or equipment, whether unloading is the result of movement of property by a mechanical device, an accident, a spill or otherwise" from coverage. (Docket No. 20-2 at 27–28). But it excepts unloading caused by the upset or overturn of an auto from the scope of the exclusion. (Docket No. 20-2 at 27–28). Plaintiffs appear to contend that, by adding this exception to the exclusion, General Star agreed to provide insurance for unloading caused by the upset or overturn of an auto. But an exception to an

exclusion does not affirmatively create coverage.  *See Donovan v. Commercial Union Ins. Co.*, 44 Mass. App. Ct. 596, 602 (1998) ("The notion, however, that if the exclusion is read so as not to extend to such cases, insurance coverage affirmatively and automatically follows, is not self-proving and would seem to be in the teeth of 'the basic principle that exclusion clauses subtract from coverage rather than grant it.'" (quoting *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 247 (1979) (emphasis in original))); *see also Boazova v. Safety Ins. Co.*, 939 N.E. 2d 793, 796 n.4 (Mass. App. Ct. 2010).  It just prevents an exclusion from applying under the specified circumstances.[1]

In any event, the Massachusetts Supreme Judicial Court has "flatly reject[ed] the concept that, because [one exclusion] excludes certain possible coverage and then provides for an exception, that exception creates an ambiguity, or an objectively reasonable expectation of coverage, when it is confronted with another explicit exclusion."  *See Bond Bros. v. Robinson*, 393 Mass. 546, 549 (1984); *see also Certain Interested Underwriters at Lloyd's London v. Stolberg*, 680 F.3d 61, 67 (1st Cir. 2012) ("If one exclusion in an insurance policy leaves some hope for an exception, but that glimmer of hope is extinguished by another exclusion, there is no basis for a finding of coverage").  Thus, if the Total Pollution Exclusion bars coverage for the Accident, the Special Hazards and Fluids Limitation Endorsement cannot create ambiguity.  And here the Total Pollution Exclusion does expressly bar coverage.  It excludes "any damages for which the insured is legally liable, or loss, costs or expenses, arising out of, resulting from, caused by or contributed to by the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time" or "loss, costs or expenses, arising out of

---

[1] Because the provisions can coexist given their plain meanings, the Court rejects the suggestion that the Total Pollution Exclusion makes the exception to the Special Hazards and Fluids Limitation Endorsement superfluous or illusory.

any request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants," (Docket No. 20-2 at 29), and gasoline, diesel fuel, and dyed diesel fuel indisputably qualify as pollutants. The Court therefore grants summary judgment in General Star's favor on all claims.

## Conclusion

For the reasons stated above, the Court ***denies*** Plaintiffs' motion for summary judgment (Docket No. 16) and ***grants*** General Star's motion for summary judgment (Docket No. 20).

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**